*727 OPINION OF THE COURT
Titone, J.
The question presented on this appeal is whether a garage owner’s personal performance of certain nonrepair services for an automobile owner precluded the garage from asserting a lien on the vehicles pursuant to Lien Law § 184 (1) for the amount owed to the garage strictly for vehicle maintenance, repair and storage. Because we conclude that defendant garage owner’s additional services for the car owner did not operate to defeat the garage’s right to assert such a lien, we reverse and remand for a determination of the amount of the lien.
I
International Automobiles, Ltd. was a company engaged in the sale and purchase of "collectors’” cars. In 1975, International employed respondent Eland Motor Car Company, a registered automotive repair shop, and its principal, respondent Andrew Bach, to restore, repair, maintain and store its collection of vehicles. Bach received a monthly fee of $4,000 for overseeing the collection as well as a 10% finder’s fee for any cars he located for International and an additional 10% commission, both to be paid to Bach at the time of the sale of any such car. Over time, International ceased paying Eland and Bach for their services. In 1988, Eland asserted a garage owner’s lien pursuant to Lien Law § 184 (1) on the International vehicles still in its possession for the portion of the outstanding debt pertaining solely to the garage services.
Eland arranged to conduct a garage keeper’s lien sale in November 1988 to sell several of International’s cars remaining in its possession to satisfy International’s unpaid repair and storage bills. Eland duly served International with notices of lien and sale (see, Lien Law § 201). International preliminarily obtained a stay against the sale, but its action against Eland for conversion which challenged the validity of the lien was subsequently dismissed with prejudice.
*728 Meanwhile, in separate and unrelated Federal actions, petitioner National Union Fire Insurance Company became a Federal money judgment creditor of International’s for over $500,000. National filed the money judgments in the Westchester County Clerk’s office in 1989. Subsequently, Eland and National Union sought to satisfy their competing interests against International by acquiring the rights to the proceeds of the sale of five of International’s cars that remained in Eland’s physical custody.[1]
Petitioner National Union commenced this proceeding against Eland pursuant to CPLR 5225 (b) to compel Eland to turn over the cars in its possession. International moved to intervene, but its application was dismissed after International’s counsel withdrew and the company failed to respond to notices of the impending proceedings. Eland conducted a sale of the vehicles on June 7, 1990 pursuant to Supreme Court order and deposited the sums received with the clerk of the court.[2] Supreme Court later granted National Union’s petition, concluding that National Union’s interest as a judgment creditor was superior to Eland’s interest in the cars. The court directed that National Union satisfy its judgments from the proceeds of the sale of the vehicles in Eland’s possession, with any amount realized from the sale in excess of those judgments payable to Eland up to a maximum of $139,244 — the amount Eland claimed it was owed for the garage services performed on the cars minus the amount claimed for the damaged Porsche. The court reasoned that Eland was not entitled to a priority lien on the cars pursuant to Lien Law § 184 (1) because Eland and International had been engaged in a joint enterprise. As a result of that conclusion, the court did not determine the amount Eland was owed for repair and storage services, although the court did conclude that Eland was owed "appreciable amounts.”
The Appellate Division affirmed. The Court rejected the trial court’s conclusion that a joint venture existed between Eland and International. Nonetheless, the Court concluded that because the transactions between the two entities consti *729 tuted much more than the traditional garage owner/car owner relationship, Lien Law § 184 was inapplicable. In so holding, the Court noted that Eland and Bach collectively oversaw the purchase and sale of the vehicles in exchange for 10% of the purchase and sale price and managed the car collection for a monthly fee. Accordingly, the Court concluded that petitioner’s interest in the vehicles as a judgment creditor was superior to Eland’s interest as a garage keeper. For the following reasons, we now reverse and remand for further proceedings in accordance with this opinion.
II
CPLR 5225 (b)[3] permits a judgment creditor to seek satisfaction of the debtor’s obligation by commencing a special proceeding against a third person in possession of money or personalty in which the judgment debtor has an interest. Rival claimants to the assets or funds may be joined in that proceeding so that the court may prioritize the competing interests (CPLR 5227, 5239; see also, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5239:l, at 443-444). Here, petitioner National Union Fire Insurance Company, as a judgment creditor of International Automobiles, seeks to satisfy International’s debt by having Eland turn over all of the proceeds of the sale of International’s automobiles that remained in respondent Eland’s possession. To obtain such relief under CPLR 5225 (b), petitioner must establish that its right to the proceeds of the sale of the vehicles is superior to respondent Eland’s interest therein.
Respondent Eland claims that it has a superior interest in the proceeds of the sale of the International automobiles at issue because it has a garage keeper’s lien on the property pursuant to Lien Law § 184. That section, pertaining to the *730 lien of a bailee of motor vehicles, provides in pertinent part that a person keeping a registered motor vehicle repair shop or garage "and who in connection therewith tows, stores, maintains, keeps or repairs any motor vehicle * * * at the request or with the consent of the owner * * * has a lien upon such motor vehicle * * * for the sum due for such [services] * * * and may detain such motor vehicle * * * at any time it may be lawfully in his possession until such sum is paid” (Lien Law § 184 [1], [4]). The purpose of the enactment is "to accord a form of security for personal credit extended by the vendor of service and supplies enhancing the value of the specified vehicle” (Slank v Dell’s Dodge Corp., 46 AD2d 445, 448).
Lien Law § 184 was an outgrowth of the artisan’s lien recognized at common law, whereby a worker "who by his labor enhanced the value of a chattel, obtained a lien upon it for the reasonable value of the work performed. That lien endowed the artisan with the exclusive right to possession of the repaired article until his charges were satisfied” (Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 161). Under settled commercial principles, when, in the ordinary course of business, an artisan or repair person furnishes services or materials with respect to goods subject to a security interest, a statutory lien upon the goods remaining in that person’s possession takes priority over even a perfected security interest therein, unless the statute authorizing the lien provides otherwise (Motor Discount Corp. v Scappy & Peck Auto Body, 12 NY2d 227; UCC 9-310, Comments 1, 2). The garage keeper’s superior lien "is a specific one attaching only to [the] certain motor vehicle” that was the subject of the unpaid charges (New York Yellow Cab Co. Sales Agency v Laurel Garage, 219 App Div 329, 334).
The statute clearly inures to the benefit of a garage owner who can establish the following elements: (1) the garage is the bailee of a motor vehicle (see, Slank v Dell’s Dodge Corp., 46 AD2d 445, 448, supra); (2) it has performed garage services or stored the vehicle with the vehicle owner’s consent (cf., id.); (3) there was an agreed-upon price or, if no agreement on price had been reached, the charges are reasonable for the services supplied (see, New York Yellow Cab Co. Sales Agency v Laurel Garage, 219 App Div 329, 333, supra); and (4) the garage is a duly registered motor vehicle repair shop as required under article 12-A of the Vehicle and Traffic Law (see, Lien Law § 184 [4]). The parties do not dispute that respondent Eland is *731 a properly registered repair shop or that Eland repaired, restored and garaged International’s cars.
Petitioner here attempts to defeat Eland’s garage keeper’s lien by arguing primarily that the business arrangement between Bach, Eland and International was beyond that of a traditional garage keeper and vehicle owner. In essence, petitioner is claiming that Eland was not a true bailee of the vehicles deposited by International in its shop for repairs. To support this argument, petitioner points to the arrangement whereby Bach would receive a 10% commission on the purchase price and sale price of each car acquired or sold in exchange for his general management of the car collection, as well as to the fact that Eland was paid by International on a monthly basis for garage services rather than on an invoice-by-invoice basis. This claim does not withstand scrutiny.
A bailment was undeniably established here by International’s voluntary relinquishment to Eland of the cars it owned for repairs, servicing and storage (see, Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 166, supra). The record does not support the conclusion that Eland had any ownership interest in the vehicles, that Eland was a partner by virtue of any profit- or loss-sharing, or that Eland and International were engaged in a joint enterprise — business relationships that might otherwise defeat Eland’s claim that it was the bailee of the vehicles as required for the assertion of such a lien. Accordingly, the Appellate Division’s conclusion that no joint venture existed between Eland and International more nearly comports with the record evidence than Supreme Court’s contrary factual finding. Critically, even if Bach’s arrangement with International gave him a personal interest in the vehicles beyond that of a bailee, Eland separately seeks to recover only for the reasonable value of the repairs and storage it performed, and Bach’s uncontroverted testimony provides that the management fees to be paid to him by International were entirely separate from those sums being sought by Eland for the garage services.
Notwithstanding the ongoing business arrangement between Bach, personally, and International, no reason can be articulated to deprive Eland of the means established by Lien Law § 184 (1) for recouping just compensation for the garage and storage services which enhanced the value of the collectible cars. No language is contained in the statute or the case law which would indicate that a garage owner should be penalized *732 simply because the shop was also engaged in a continuing business relationship with the owner of multiple vehicles. Similarly, the fact that International may have paid Eland on a monthly basis for its garage services rather than on an invoice-by-invoice basis does not preclude the garage from asserting the lien, so long as the garage establishes the amount of the outstanding fees for services rendered with respect to each particular car that is the subject of a garage keeper’s lien.
Because the courts below erroneously determined that the nature of the business contacts between Eland and International negated Eland’s right to assert a garage owner’s lien pursuant to Lien Law § 184, they failed to reach any determination on the amount of the outstanding debt owed by International to Eland for the restoration, repair and storage of the vehicles in question. Accordingly, on remand, the court must determine the amount of the outstanding debt owed by International for each particular vehicle (see, New York Yellow Cab Co. Sales Agency v Laurel Garage, 219 App Div 329, 333, supra). Respondent Eland holds a superior lien for that amount against each vehicle, and petitioner National Union will be entitled to any excess up to the amount of its unsatisfied money judgments.
Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.
Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
Order, insofar as appealed from, reversed, etc.

. These cars included a 1984 Ferrari, a 1979 Mercedes Benz, a 1981 Mercedes Benz, a 1982 Porsche, and a 1977 Jaguar.

. Respondent Eland purchased three of the vehicles at the sale for a total of $24,000. The fourth vehicle had a title defect and could not be purchased at the sale. The fifth vehicle, the Porsche, was apparently damaged by Eland’s employees while in transit, and is the subject of a pending insurance claim.

. This subdivision, entitled "Property not in the possession of judgment debtor,” provides, in relevant part: "Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor’s rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff’.