Matter of Mercedes-Benz Fin. Servs. USA LLC v Clutch Towing (2024 NY Slip Op 24182)

[*1]

Matter of Mercedes-Benz Fin. Servs. USA LLC v Clutch Towing

2024 NY Slip Op 24182

Decided on June 26, 2024

Supreme Court, Albany County

Marcelle, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on June 26, 2024
Supreme Court, Albany County

In the Matter of Mercedes-Benz Financial Services USA LLC, Petitioner

against
Clutch Towing, and The New York State Department of Motor Vehicles, Respondents.

Index No. 902179-24

Law Offices of Rudolph J. Meola, Albany 
(John M. Dubuc, of counsel) for Petitioner
Law Offices of Faris S. Hamtini, P.C.
(Faris S. Hamtini) for Respondent Clutch Towing

Thomas Marcelle, J.

Respondent Clutch Towing ("Clutch") claims a garage lien on a vehicle that it towed and stored for an owner who never came back to retrieve it or pay for the services. Petitioner Mercedes-Benz Financial Services USA LLC ("MBF") however says the lien is invalid.
Before delving into the legal analysis, the court finds the facts as follows. Mujahid Khan ("Khan") was the titled owner of a 2018 Mercedes GLE350 and MBF was the lien-holder on the vehicle. On October 9, 2023, Clutch received a request from Khan to tow his Mercedes. When Clutch towed Khan's car, Clutch presented Khan with a form on its letterhead titled "Authorization to Tow." This form identified the vehicle to be towed, where from and where to the vehicle would be towed, as well as the fees to be charged. Specifically, it enumerates: "towing $350 . . . equipment $195 . . . labor $85 . . . [and] storage $75 per day." The form bears Khan's name at the top and his signature towards the bottom of the page and is dated October 9, 2023. Thus, Clutch proceeded to tow Khan's vehicle to its storage yard in Brooklyn, NY.
Khan failed to retrieve his vehicle though, so Clutch made multiple attempts to contact him, all to no avail. On November 7, Clutch called MBF to notify it that Clutch was in possession of the vehicle. MBF then emailed Clutch that same day requesting an invoice regarding the services Clutch provided to Khan, the signed Authorization to Tow, and photos of the vehicle—all reasonable requests. Clutch replied to MBF's email the following day attaching multiple photos of the vehicle. Inexplicably, Clutch did not provide any invoice or the signed authorization signed by Khan.
According to Clutch, as of November 8, it had incurred fees amounting to over $3,000, largely as a result of storing the vehicle at $75 per day since October 9. From that time in [*2]November through the rest of the calendar year, the parties had no further communication. Accordingly, Clutch continued to hold onto the vehicle in its storage yard.
The next contact between Clutch and MBF was February 15, 2024, when MBF requested the vehicle through counsel. Clutch refused to release the vehicle though because MBF was unwilling to pay the accrued fees of $11,301.23. MBF then commenced this proceeding on February 29. Clutch released the vehicle to MBF on April 1, in response to the court's order to show cause. These facts are undeniable.
Clutch now claims fees in the amount $15,057.41, compiled from October 9, 2023 to April 1, 2024. MBF, on the other hand, calls for Clutch's entire lien to be cancelled.
Clutch's lien claim arises under Lien Law § 184 (1). The statute provides, in relevant part, that "[a] person keeping a garage . . . or place for the storage, maintenance, keeping or repair of motor vehicles . . . and who in connection therewith tows, stores, maintains, keeps or repairs any motor vehicle . . . at the request or with the consent of the owner . . . has a lien upon such motor vehicle . . . for the sum due for such [services] . . . and may detain such motor vehicle ... at any time it may be lawfully in his possession until such sum is paid . . . ."
The Court of Appeals has distilled Lien Law § 184 into a neat and logical test, which has been applied throughout by appellate and trial courts alike. The test contains the following cantles which must be established by a garageman asserting a lien: "(1) the garage is the bailee of a motor vehicle; (2) it has performed garage services or stored the vehicle with the vehicle owner's consent; (3) there was an agreed-upon price or, if no agreement on price had been reached, the charges are reasonable for the services supplied; and (4) the garage is a duly registered motor vehicle repair shop as required under article 12-A of the Vehicle and Traffic Law" (Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v Eland Motor Car Co., 85 NY2d 725 [1995] [internal citations omitted]).
Regarding prong one, Clutch easily establishes that it was the bailee of the subject vehicle and MBF does not contend otherwise. The conflict rather is waged over prongs two, three, and four. Regarding prong two, there is no dispute that Clutch "performed garage services or stored the vehicle" (Id. at 730). Clutch has demonstrated sufficiently that the vehicle was towed and stored, both allowable services under Lien Law § 184 (1). As to Khan's consent, MBF claims the agreement is vague and therefore vitiated Khan's ability to consent; Clutch argues, on the other hand, that the agreement is pellucid. A review of the Authorization to Tow document is thus necessary to determine its validity.
The elements of an express contract include an offer, acceptance, and consideration. Now, applying this rule to the Authorization to Tow: the document delineates the services Clutch provided to Khan and specifies the price for each service: "towing $350 . . . equipment $195 . . . labor $85 . . . [and] storage $75 per day." This constitutes a valid offer. Further, Khan signed his name to the document agreeing to pay Clutch for the services at the specific prices set forth in the agreement. This constitutes acceptance of the offer as well as consideration. The court finds therefore that the Authorization to Tow was a valid and binding contract upon Clutch and Khan.[FN1]

Given the assessment of prong two, prong three—regarding "an agreed-upon price"— falls in line (Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 85 NY2d at 730). As discussed, there was an agreed-upon price for the towing and storage and Khan consented to these charges, affixing his signature to the Authorization to Tow document. Thus, Clutch satisfies prong three of the test.
Finally, as to the fourth cantle, MBF argues that Clutch provided insufficient proof of "proper registration." MBF's short-hand reference refers to the requirement to be a "duly registered motor vehicle repair shop . . . " (Id.). Clutch counters by claiming it was not required to register as a repair shop at all, because it is a tow company, not a repair shop. 
A careful reading of the statute, Lien Law § 184 (4), demonstrates that only when a garage is "required to be registered as a motor vehicle repair shop" but "is not so registered," a garage is prevented from having a lien under that section. In other words, if Clutch is required to be registered as a repair shop, it cannot claim a lien. Now, a "motor vehicle repair shop" means any entity which "for compensation, is wholly or partially engaged in the business of repairing or diagnosing motor vehicle malfunctions or repairing motor vehicle bodies, fenders or other components damaged by accident or otherwise" (VTL 398-b). This is not Clutch's business; it tows cars, it does not repair them. Thus, consistent with Lien Law § 184 (1) and (4), a tow truck operator, like Clutch, can assert a lien for towing and storage services without being a registered repair shop—such is the case here. Prong four of the test therefore is inapplicable in this situation. As a result, Clutch has a valid garageman's lien for the towing and storage of the vehicle at least under the test set out in Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. 
Yet, MBF levels other attacks at Clutch's lien claim—both legal and equitable. For one, MBF raises the issue of notice. Specifically, MBF avers that Clutch was required to give it notice that it was asserting a garage lien regarding the Mercedes. Clutch's alleged failure to do so, according to MBF, negates any garage lien. MBF's reasoning needs some unravelling. There is no dispute that Clutch provided MBF with notice that it possessed the Mercedes during the phone call on November 7. The essential matter therefore is whether that phone call constituted sufficient notice under the law. MBF cites various statutory authority for its proposition that the November 7 phone call was not sufficient notice.
MBF first refers to Lien Law § 184. The statute does contain subdivisions with respect to providing notice to other lienholders, which would include MBF, but only in the case of "[a] person who tows and stores a motor vehicle at the request of a law enforcement officer . . . " (184[2],[5]). Kahn's car was towed at his request, not law enforcement's, so those subsections contained in § 184 are inapplicable. MBF also relies on VTL 2129 (c). But that statute has nothing to do with providing notice to a lien holder of the vehicle but rather to the "commissioner" of motor vehicles. It is thus inapposite here. VTL 1224 (3) and NYCRR § 18.3 are also pointed to by MBF, but they too are irrelevant. The statute and regulation merely promulgate the duties and obligations of "local authorities" with respect to abandoned vehicles—Clutch is not a local authority. In the end, there is no statutory or legal authority the court is aware of that would require Clutch to give MBF notice of its claimed garage lien.
Next, MBF says that Clutch's inclusion of non-allowable costs in its lien, like for [*3]equipment and labor, cancels the garage lien in total. MBF is correct about this—labor and equipment charges are not specifically mentioned as allowable costs in Lien Law § 184 (1) and therefore the fees cannot be included in Clutch's lien. At the same time, MBF's conclusion that Clutch's attempt to place a lien on some non-allowable costs renders the entire lien eliminated is another story. To be sure, § 184 (1) affirmatively mandates that the garage "has a lien upon such motor vehicle . . . for the sum due for such [allowable services] . . . ." Moreover, there is no appellate case law or otherwise binding precedent the court is aware of that deems a garage's lien cancelled, for the sole reason that the garage sought allowable and non-allowable costs together.[FN2]

Certainly, if the garage was demanding payment for fees that were all (or almost all) not permitted by the statute, that would be one thing. Yet, on November 7 when Clutch and MBF spoke on the phone and had an email exchange about the vehicle the following day, the non-allowable fees amounted to about $400 (labor and equipment) and statutorily allowed costs of about $2,675 (tow and storage). Moreover, MBF's claim that Clutch refused to release the vehicle on November 7 assumes MBF had offered to pay the fees for the allowable services in the first place. There is no evidence that MBF in November ever offered to pay Clutch for the sum of the statutorily allowable costs amounting to $2,675 (or that MBF even demanded the vehicle at that time). The November communications between MBF and Clutch, at most, involved Clutch informing MBF that it had the vehicle and MBF requesting invoices and other documents regarding the car. Therefore, the court cannot conclude that Clutch refused to turn the car over to MBF in November or, even if Clutch did, that its refusal would operate to cancel the lien as to the $2,675.[FN3]
,[FN4]

MBF, unable to find aid at law for its position, resorts to equity, specifically the doctrine of laches. "Laches is an equitable doctrine which bars recovery where a party's inaction has prejudiced another party, making it inequitable to permit recovery" (Vickery v Vill. of Saugerties, 106 AD2d 721, 723 [3d Dept 1984]). As the argument goes, Clutch should not be credited storage fees that it gained from its delay or by tactics designed only to augment the amount of the lien.
Now, Clutch knew, at the latest, in early November 2023 that MBF had a lien on the vehicle. And although Clutch contacted MBF on November 7 (with an email the next day), Clutch made no further efforts to communicate with MBF. All the while Clutch continued to accrue storage fees up until April 2024 when it finally released the vehicle to MBF in response to a court order. MBF has a solid point—there would be a real disparity in fairness to reward Clutch with storage fees it accumulated through intentionally (or from mere lassitude) sitting on its hands while watching its storage fees pile up by the day. 
At the same time, Clutch is not the only one who delayed. MBF did too. When MBF knew Clutch possessed the vehicle in November, it then proceeded to wait until mid-February to actively pursue redeeming the vehicle. The court therefore must exercise its discretion in balancing the scales to decide what is fair—this is the core of the court's equity jurisdiction (Goodfarb v Freedman, 76 AD2d 565, 572 [2d Dept 1980]).
Regarding Clutch's wait of 30 days before contacting MBF, the court does not find that initial 30 day period to be unreasonable, especially in light of Clutch having tried to contact Khan multiple times to come pick up his car before notifying MBF. Clutch therefore should be granted its storage fees for this time period. Turning to the happenings of post-November 8. Once Clutch called MBF on November 7 and emailed it on the 8th with photos of the vehicle, the onus shifted to MBF to act. Surely, MBF may be allotted a moderate window of time to demand the vehicle, offer to pay the statutorily allowed fees or file a court proceeding without incurring costs. The court believes MBF should have taken action no later than December 13, 2023, with the concomitant growth of Clutch's storage fees freezing from November 9 to December 13. Yet, MBF did nothing during this time and indeed not until February 15 did it request the vehicle from Clutch. MBF's inertia should not be counted against Clutch. Thus, Clutch is permitted storage fees from December 14 to February 14 as well. Finally, once MBF demanded the vehicle on February 15 and pursued return of the vehicle, Clutch's stream of daily storage fees should have been shut off as well.[FN5]

Therefore, based on this, the court calculates Clutch's lien as follows. Clutch, in addition to the towing fee of $350, is due its storage fees from October 9, 2023 to November 8 as well as from December 14, 2023 to February 14, 2024. This amounts to storage fees for 94 days at $75 per day, which equals $7,050 (storage) and $350 (towing).
Therefore, it is
ORDERED and ADJUDGED that the lien asserted by Respondent Clutch Towing with respect to the 2018 Mercedes Benz (VIN: 4JGDA5HB0JB062470) is valid for the amount of $7,400.00 and the remainder of its claimed lien is otherwise invalid.
The foregoing constitutes the Decision, Order and Judgment of the court.
ENTER
DATED: June 26, 2024
Thomas Marcelle
Supreme Court Justice

Footnotes

Footnote 1:With respect to the equipment charge of $195 and the labor cost in the amount of $85, perhaps these charges related directly to the towing and storage of the vehicle, perhaps not. The contract doesn't say. These terms are vague and would invite speculation, which the court will not do. Therefore, no contract exists as to these charges and respondent has no lien as to these items (see F & K Supply Inc. v Willowbrook Dev. Co., 288 AD2d 713, 715 [3d Dept 2001]).

Footnote 2:Regarding MBF's reference to Santander Consumer USA, Inc. v Steve Jayz Auto. Inc., 197 AD3d 1407, 1408 [3d Dept 2021], the court held the garage's lien to be null and void "based on laches" due to "[the garage's] intentional and unreasonable delay of more than six months in preparing the notice of lien and sale after the storage fees began to accrue . . . " (Id.). Steve Jayz Auto. Inc. therefore does not stand for the proposition that asking for more fees than a garage is entitled to, alone, disintegrates the lien; but instead that waiting an unreasonable amount of time before notifying the lien holder (ie. over six months) may be an equitable bar to a garage lien.

Footnote 3:MBF also makes an argument that the storage fees accumulated through November 7 were "front charged" which MBF says voids any garage lien. This allegation that the storage fees were "front-charged" by Clutch is not accurate. Front-charging means that the storage fees were charged in advance of actually being incurred (see Nissan Infinity LT v Bills Sales & Servs., 209 AD3d 1194, 1197 [3d Dept 2022]). Here though, Clutch charged $75 per day and at all times only sought the fees for the days the vehicle was actually in its possession; Clutch never charged a lump sum up front fee for storage yet to be realized, but only on a rolling as incurred basis.

Footnote 4:On February 15, 2024, when MBF did request the release of the car, it still did not offer to pay Clutch the $2,675 it was due in November.

Footnote 5:Although the court need not reach the question of whether the charges for towing and storage are reasonable given the agreed-upon price between Clutch and Khan, the court finds that $350 for towing and $75 per day to store a car in the Brooklyn yard is reasonable (Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v Eland Motor Car Co., 85 NY2d at 730).